IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| **OYSTER OPTICS, LLC,**<br>*Plaintiff,*<br><br>v.<br><br>**CORIANT AMERICA INC. ET AL.,**<br>*Defendant.* | § § § § § § § § § § | Case No. 2:16-cv-1302<br>LEAD CASE |
| **OYSTER OPTICS, LLC,**<br>*Plaintiff,*<br><br>v.<br><br>**CIENA CORPORATION,**<br>*Defendant.* | § § § § § § § § § § § | Case No. 2:17-cv-511<br>Consolidated Case |

**MEMORANDUM OPINION AND ORDER GRANTING-IN-PART DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE TRANSFER BASED ON IMPROPER VENUE AND CONVENIENCE**

Before the Court is Defendant Ciena Corporation's ("Ciena") Motion to Dismiss or in the Alternative Transfer Based on Improper Venue and Convenience (Dkt. No. 5) seeking dismissal for improper venue under 28 U.S.C. § 1400(b) or, in the alternative, transfer to the Northern District of California for convenience under 28 U.S.C. § 1404(a). Having considered the Parties' submissions and the relevant authorities, the Court is of the opinion that Ciena's Motion to Dismiss for Improper Venue should be and is hereby **DENIED**. However, the Court is also of the opinion that Ciena's Motion to Transfer for Convenience should be and is hereby **GRANTED**.

I. BACKGROUND

Plaintiff Oyster Optics LLC ("Oyster") filed suit against Ciena and Ericsson Inc. on November 24, 2016 (Dkt. No. 1, 2:16-cv-1300). The claims against Ericsson Inc. were severed by this Court, on the Parties' unopposed motion, and the remaining claims against Ciena were assigned their own docket number (Dkt. No. 38, 2:16-cv-1300; Dkt. No. 1, 2:17-cv-511).

Ciena moved to dismiss the original Complaint alleging insufficient infringement allegations by Oyster under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 30, 2:16-cv-1300). Ciena's motion did not allege improper venue. Oyster filed an Amended Complaint. (Dkt. No. 35). In its Answer to the Amended Complaint, Ciena "reserve[d] its right to object to venue as improper pending the Supreme Court's resolution of the issues raised in *TC Heartland LLC v. Kraft Foods Group Brands LLC*, No. 16-341." (Dkt. No. 46, 2:16-cv-1302 at ¶ 7.)[1]

Oyster is a Texas corporation headquartered at 11921 Freedom Drive, Suite 550, Reston, Virginia 20190. (Am. Compl., Dkt. No. 35 at ¶ 1.) "Its managers, Jeffrey Ronaldi and Bruce Lagerman, reside in Virginia and South Carolina, repectively." (Resp., Dkt. No. 19 at 3.) "The sole inventor of the asserted patents, Peter Snawerdt, lives in Florida." (*Id.*) Oyster was incorporated in Texas, five months prior to the filing of its Complaint in this case. (Declaration of Christina Ondrick ("Ondrick Decl."), Dkt. No. 5 Attch. 1 Ex. A.)

Ciena is a Delaware corporation headquartered in Hanover, Maryland. (Declaration of David M. Rothstein ("Rothstein Decl."), Dkt. No. 5 Attch. 11 at ¶ 2.) Ciena has several offices and facilities across America, with two locations in Texas, one in Richardson and one in Dallas.

---

[1] At that time, Ciena asserted that "Ciena does not reside in this District, has not committed any act of infringement in this District (or elsewhere), and has no regular or established place of business in this District." (*Id.*)

(Deposition of David M. Rothstein ("Rothstein Depo."), Dkt. No. 19 Ex. 1 at 31:13–14.)  Ciena also has employees who work remotely, categorized by Ciena as "homeworkers" or "remote workers."  (Rothstein Depo. at 31:20–21.)  Approximately 100 employees of Ciena work in Texas, with approximately 47 of them living in and working from home within the Eastern District of Texas.  (*Id*. at 32:16–19.)  These employees do not maintain product inventory or samples in their homes.  (*Id*. at 33:4–15.)  It is unclear whether or not they maintain any sales or marketing materials in their homes.  (*Id*.)  Ciena sells the accused products to customers nationwide, including to customers in Texas and within the Eastern District, specifically.  (*Id*. 42:21–43:4.)

Ciena's primary research, design, and development operations, globally, for its coherent optical products, including the accused devices, is conducted in Ottawa, Canada.  (Rothstein Decl. at ¶15.)  Ciena's largest U.S.-based research and development facility is located in San Jose, California, which is within the Northern District of California.  (*Id*. at ¶11.)  Ciena's operations in its San Jose facility are the single largest location where Ciena conducts the research, design, and development of its products, including software platforms that run on certain accused products. (*Id*.)  Portions of Ciena's accused products were designed and developed by employees at the San Jose facility; Ciena's software-related technical documents are accessible from that facility, although they are stored digitally across Ciena's network;[2] and one of Ciena's Vice Presidents at the San Jose facility has been identified as a potential witness in this case.  (*Id*. at 12.)

Three of Ciena's remaining witnesses, all Vice Presidents or Directors expected to provide technical, sales, and marketing testimony on the accused products, are located in Canada.  (*Id*. at

---

[2] None of Ciena's software-related technical documents are located within the Eastern District of Texas, although Ciena's Texas facilities appear to be able to access these materials.  (Rothstein Depo. at 55:22–24.)  The Richardson facility is only a few miles from this District.

¶15). It is asserted that two of these three witnesses regularly travel to Ciena's facilities in the California for business related purposes. (*Id.* at ¶¶16–17.) Additionally, Ciena has identified third party component suppliers for the accused products who reside in San Jose, California. (*Id.* at ¶¶4–9.)

II.   DISCUSSION

In its Motion, Ciena first argues that venue in this Court is improper under 28 U.S.C. § 1400(b) in light of the Supreme Court's recent decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, ___ U.S. ___, 137 S. Ct. 1514 (2017). Secondly, Ciena argues, alternatively, that this Court should transfer the claims against Ciena for reasons of convenience to the Northern District of California pursuant to 28 U.S.C. § 1404(a). The Court addresses both issues in turn.

   a.   Improper Venue under 28 U.S.C. § 1400(b)

"Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (2012); *TC Heartland*, 137 S. Ct. at 1519 ("§ 1400(b) 'is the sole and exclusive provision controlling venue in patent infringement actions.'") (quoting *Fourco Glass Co. v. Transmirra Products Corp.*, 353 U.S. 222, 229 (1957)). If venue is not proper, a defendant may move to dismiss the case or transfer it to a district in which the case could have been originally brought. Fed. R. Civ. P. 12(b)(3); 28 U.S.C. § 1406(a).

While § 1400(b) does not define the word "resides," the Supreme Court in *Fourco* concluded that, under § 1400(b), a domestic corporation resides in its state of incorporation. 353 U.S. at 226; *TC Heartland*, 137 S. Ct. at 1521. Even if a domestic corporation does not reside in the district in which the case is filed, venue remains proper if that defendant has committed acts of

infringement in the district and has a regular and established place of business within the district. 28 U.S.C. § 1400(b).

      i. Waiver

Oyster first objects to Ciena's Motion based on improper venue asserting that Ciena has waived its improper venue challenge by failing to raise the issue in its first 12(b) motion to this Court where it sought dismissal under 12(b)(6) only. (Dkt. No. 19 at 4–5). Ciena filed its first 12(b) Motion to Dismiss for Failure to State a Claim under Rule 12(b)(6) on February 21, 2016. (Dkt. No. 30, 2:16-cv-1300). It is undisputed that Ciena did not raise improper venue as part of that Motion.

Despite this procedural defect, Ciena urges that its venue challenge is not waived based on a theory of an intervening change in the law, arguing that "there can be little doubt *TC Heartland* represents a change in the law." (Dkt. No. 5 at 7). As such, Ciena's "failure to interpose such a defense prior to the announcement of a decision which might support it cannot prevent [Ciena] from later invoking such a ground . . . . [A]n effective waiver must . . . be one of a 'known right of privilege'" (*Id*. at 7 (quoting *Curtis Publ'g Co. v. Butts*, 388 U.S. 130, 143)).

While it is true that "[t]he Supreme Court has repeatedly held that a party cannot be said to waive a right that was judicially created after the supposed waiver," *United States v. Lucia*, 416 F.2d 920, 922 (5th Cir. 1969), *opinion withdrawn in part*, 423 F.2d 697 (5th Cir. 1970) (referencing *Curtis*, 388 U.S. 130), the Court in *TC Heartland* did not create a right that was previously unavailable. To the contrary, in *TC Heartland* the Supreme Court simply reaffirmed its prior interpretation of 28 U.S.C. § 1440(a) as controlling. *See TC Heartland,* 137 S. Ct. at 1520 (citing A. Scalia & B. Garner, Reading Law 331 (2012) ("A clear, authoritative judicial holding on the

meaning of a particular provision should not be cast in doubt and subjected to challenge whenever a related though not utterly inconsistent provision is adopted in the same statute or even in an affiliated statute")).

The Court's reversal of the Federal Circuit did not establish a new right or privilege unavailable to Ciena at the time it filed its original 12(b) motion. To the contrary, the Defendant's right, which Ciena was free to "assert, or [] waive, at his election," to file an initial motion under Rule 12(b) and claim the "personal privilege respecting the venue, or place of suit," has merely been reaffirmed. *Commercial Ins. Co. v. Stone Co.*, 278 U.S. 177, 179 (1960). According to the Supreme Court, the law of venue when Ciena filed its Rule 12 Motion is the very law that Ciena claims was "not available," (Dkt. No. 5 at 7), when Ciena made this election. *TC Heartland*, 137 S.Ct. at 1521 ("Fourco's holding rests on even firmer footing *now* . . . .") (emphasis supplied).

At most, the Court's action in *TC Heartland* could be characterized as a rejection of subsequent case law from a lower court, but not an intervening change in law. *TC Heartland* stands as a direct reaffirmance of existing law that is, was, and has always been available to Ciena during these proceedings. *See, e.g., Palacios v. United States*, No. 2012-5028, 2012 WL 2415348, at *2 (Fed. Cir. Mar. 8, 2012) ("Regardless of whether this court would overrule its own precedent, if sitting en banc, we certainly cannot overrule Supreme Court precedent.").

Even if the result announced in *TC Heartland* were to be ultimately considered an intervening change of law, that would not necessarily compel the Court to permit Ciena's untimely venue challenge. As this Court held in *Navico, Inc. v. Garmin Int'l, Inc.*, Federal Circuit law should control whether an objection to venue based on § 1400(b) has been waived. No. 2:16-cv-190, 2017 WL 2957882, at *1 (E.D. Tex. July 11, 2017). However, binding Federal Circuit

precedent does not permit a broad application of the intervening law doctrine as an exception to waiver, especially when waiver arises from a procedural misstep, such as an untimely filing. *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1352 (Fed. Cir. 2008).[3]

Accordingly, even if *TC Heartland* were to be considered an intervening change in the law—which this Court is persuaded is not the case—because the omission of improper venue from Ciena's first 12(b) motion constitutes a "procedural misstep," Ciena cannot now "invoke intervening Supreme Court case law" in order to "correct" it. *Kyocera*, 545 F.3d at 1352. This Court, finding waiver, would "need not engage in a[ venue] inquiry when [Ciena] did not assert relevant [venue] arguments at the proper time."

However, were the Federal Circuit were to determine that waiver of venue is governed by regional circuit law, as some courts have suggested,[4] Ciena's position fares no better under the law of the Fifth Circuit. The Fifth Circuit has consistently refused to "excuse [] procedural default[s]," where the "law (this issue) was not so settled" that timely raising the issue "would have been pointless or futile." *Martinez v. Texas Dep't of Criminal Justice*, 300 F.3d 567, 574 (5th Cir. 2002). Given the result in *TC Heartland*, and given that *Fourco* was never overruled,

---

[3]
> Qualcomm now argues it never had the opportunity to present evidence under the proper legal standard because the Supreme Court's decision in KSR Int'l Co. v. Teleflex, Inc. was decided after the ITC's determination of liability. . . . Qualcomm cannot invoke intervening Supreme Court case law to correct its own procedural misstep. . . . This court need not engage in an obviousness inquiry when Qualcomm did not assert relevant obviousness arguments at the proper time. Further, because Qualcomm waived the defense of obviousness, this court declines to consider the merits of Qualcomm's position that Broadcom's asserted claims are obvious in light of the prior art.

*Kyocera*, 545 F.3d at 1352 (citations omitted); *Hazani v. U.S. ITC*, 126 F.3d 1473, 1476–77 (Fed. Cir. 1997) ("We find no legal error in the administrative law judge's determination that the arguments that Hazani raised for the first time on reconsideration were untimely and could properly be rejected on that ground alone."))

[4] *See, e.g., Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-cv-21, 2017 WL 2556679, at *2 (E.D. Va. June 7, 2017) (holding that Fourth Circuit law applies because waiver is not unique to patent law).

Defendant cannot claim its argument was frivolous or futile. *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. at 1520–21 ("In *Fourco*, this Court *definitively and unambiguously held* that the word "reside[nce]" in § 1400(b) has a particular meaning as applied to domestic corporations . . . . *Fourco*'s holding *rests on even firmer footing now* that § 1391's saving clause expressly contemplates that certain venue statutes may retain definitions of "resides" that conflict with its default definition.") (emphasis supplied). Under either scenario, Ciena may not side-step procedural requirements imposed by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(h)(1)(A). "The procedural bar doctrine (failure to raise the issue in the opening brief) is not trumped by the retroactivity doctrine [wherein an intervening decision may apply to cases on direct appeal]; and if Supreme Court decisions applied without regard for procedural default rules, then no procedural bar would ever be enforced." *Martinez*, 300 F.3d at 574 (citing *United States v. Ardley*, 273 F.3d 991 (11th Cir. 2001) (Carnes, J., concurring in the denial of en banc) (citations omitted). This Court, finding waiver, would decline to consider the merits of Ciena's "newly raised" claim of improper venue. *Martinez*, 300 F.3d at 575.

Since Ciena did not raise a claim of improper venue in its original motion to dismiss under Rule 12, Ciena has waived any claim of improper venue.

b.  Transfer for Convenience under § 1404(a)

Having first determined that Ciena's challenge to venue was waived and need not be addressed on the merits, the Court now turns to that portion of Ciena's Motion which seeks a transfer under § 1404(a) based on convenience. As this Court noted in *Kranos IP Corp. v. Riddell, Inc.*, "the convenience analysis supplements the proper venue inquiry" and that "[i]n many cases, even where venue is found to be proper in this District, the reality remains that another district

may nonetheless be a clearly more convenient venue." No. 2:17-cv-443, 2017 U.S. Dist. LEXIS 138108 at *24 (E.D. Tex. Aug. 28, 2017). Such is the case here.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The purpose of Section 1404(a) is "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Cont'l Grain Co. v. Barge F.B.L.—585*, 364 U.S. 19, 26, 27 (1960)).

The first inquiry when analyzing a case's eligibility for § 1404(a) transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). Once that threshold is met, courts analyze both public and private factors relating to the convenience of parties and witnesses, as well as the interests of particular venues in hearing the case. *See Humble Oil & Ref. Co. v. Bell Marine Serv., Inc.*, 321 F.2d 53, 56 (5th Cir. 1963); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009). The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Volkswagen I*, 371 F.3d at 203. The public factors are (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Volkswagen I*, 371 F.3d at 203. These factors are to

be decided based on "the situation which existed when suit was instituted." *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960). Though the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314–15 (5th Cir. 2008) ("*Volkswagen II*").

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *Id.* at 315. In order to support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *Id.* Absent such a showing, the plaintiff's choice is to be respected.

Ciena asserts, and Oyster does not dispute, that this case could have been brought in the Northern District of California. (Dkt. No. 5 at 9.) Ciena concedes that "Ciena has a regular and established place of business" in San Jose and Petaluma. (*Id.*) With these concessions, the Court agrees that this case could have been properly brought in the Northern District of California, satisfying the threshold requirement for transfer under § 1404(a).

The Court next addresses the applicable private and public interest factors, in turn, and addresses the Parties' arguments as appropriate. As an initial matter, both Parties concede that the public factors relating to familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflicts of law are neutral factors in this analysis. The Court agrees and proceeds to the rest of the analysis.

         i.    The Relative Ease of Access to Sources of Proof

The first private interest factor regards access to sources of proof pertains to where documentary evidence, such as documents and physical evidence, is stored.[5] *See Volkswagen II*, 545 F.3d at 316 (discussing the location of documents and physical evidence relating to a vehicle accident).

Ciena's largest corporate research, development, and design operations are based in or near Ottawa, Canada, with Ciena's largest U.S.-based research and development facility in San Jose, California. (Rothstein Depo. at 49:17–21). While Ciena's documents are stored digitally on their network and accessible from anywhere, Ciena does not have any documents or other sources of proof within the District. (Dkt. No. 19 at 3 (identifying facilities in Texas, but not the District).) Additionally, Oyster does not identify any evidence that is located in or accessible from the District. (*Id*. At 12.) Accordingly, in this case this factor weighs in favor of transfer.

        ii.    Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor pertains to a court's ability to compel attendance of witnesses, particularly non-party witnesses.

As identified by Ciena, and not disputed by Oyster, the majority, if not all, of accused device third-party component manufacturers are located in the Northern District of California. (Rothstein Decl. ¶ 3–10.) While at this stage Ciena has not identified specific witnesses, who may well reside outside of the Northern District, these third party suppliers have major presences in the Northern District.

---

[5] Although witnesses are "sources of proof" in a sense, the Court analyzes the various arguments made regarding witnesses under the factors that focus on the availability of compulsory process and/or the cost of attendance for willing witnesses. The Parties have structured their arguments consistent with this framework.

Oyster asserts that since Ciena did not point to specific witnesses they would call (so that the Court may ascertain the applicability of compulsory process over those witnesses) Ciena should not have a credible argument on this factor. However, Ciena has identified an established pool of likely third party witnesses as to whom the Northern District clearly exercises compulsory process. While greater specificity would certainly strengthen Ciena's position, they have made a relevant showing which the Court considers, at some level, to be probative.

Oyster also asserts that there is no need to have live testimony at trial when depositions are available and so the factor is neutral. While this may be theoretically correct, reaching such a conclusion would effectively eliminate this factor in every case.

Having considered all relevant aspects of the parties arguments, the Court finds this factor weighs in favor of transfer.

### iii. Cost and Attendance for Willing Witnesses

The third private interest factor is the cost of attendance for willing witnesses. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. However, as other courts in this Circuit have noted, the convenience of party witnesses is given less weight. *ADS Sec. L.P. v. Advanced Detection Sec. Servs., Inc.*, No. A-09-CA-773-LY, 2010 WL 1170976, at *4 (W.D. Tex. Mar. 23, 2010), report and recommendation adopted in A-09-CA-773-LY (Dkt. No. 20) (Apr. 14, 2010) ("[I]t is unclear whether Defendant is contending that the transfer would be more convenient for non-party witnesses or merely for their own employee witnesses. If the Defendant is referring to employee witnesses, then their convenience would be entitled to little

weight."). *See also Vassallo v. Goodman Networks, Inc.*, No. 5:14-cv-743-DAE, 2015 WL 502313, at *4 (W.D. Tex. Feb. 5, 2015) (noting that the convenience of non-party witnesses is given more weight in the transfer analysis than the convenience of party witnesses); *Summit 6 LLC v. HTC Corp.*, No. 7:14-cv-0014-O, 2014 WL 4449821, at *7 (N.D. Tex. Sept. 10, 2014) (same); *RPost Holdings, Inc. v. StrongMail Sys., Inc.*, No. 2:12-cv-515-JRG, 2013 WL 4495119, at *4 (E.D. Tex. Aug. 19, 2013) (same).

Ciena has identified certain witnesses from among their own employees: three located in Ottawa and one located within the Northern District of California. (Rothstein Decl. ¶ 16–17.) Ciena's assertions that two of the three party witnesses located in Ottawa have regular business in the Northern District and are regularly present there, (*id*.), carry no weight with the Court. Reliance on a prediction regarding their presence at the time of trial would be speculative and invite potential gamesmanship.

Similarly, Oyster has identified four potential party witnesses among its employees: one in Virginia, one in South Carolina, one in Florida, and one in Austin, Texas. (Dkt. No. 19 at 11.) While all of these are closer to this District than the Northern District of California, Oyster has identified no witnesses who reside within the Eastern District.

Considering these facts, and all other relevant aspects of the factor, the Court finds this factor to be neutral.

> iv. All Other Practical Problems That Make Trial of a Case Easy, Expeditious, and Inexpensive

This final private interest factor pertains to "all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

While Ciena asserts that there are no practical problems with conducting the trial in the Northern District of California, Oyster submits that judicial economy strongly weighs against transfer, given there are seven related cases before this Court involving the same patents. Oyster urges this Court to consider these copending cases in its analysis of this factor. (Dkt. No. 19 at 16.) Since filing of Oyster's brief, one of the seven cases was dismissed by stipulation. (2:16-cv-1300, Dkt. Nos. 35, 43.)

While certain cases warn against giving excessive weight to this scenario, *see In re Google, Inc.*, giving consideration to the existence of copending cases is not foreclosed. No. 2017-107, 2017 U.S. App. LEXIS 4848 (Fed. Cir. Feb. 23, 2017). Rather, *In re Google* indicates that courts should avoid considering copending cases which currently have, or have had, motions to transfer venue to avoid any "double count" in according proper weight. Taking this into account, there are five copending cases to be evaluated under this factor, as one of the six remaining cases identified by Oyster has a pending motion to transfer venue. (Dkt. No. 28, 2:16-cv-1301.)

Considering the relevant facts under this factor, and in the light of the Circuit's guidance, this factor weighs in favor of denying transfer. This determination having been reached as to this factor, the Court recognizes that, while judicial economy may "play a significant role" in a court's transfer analysis, it may not "dominate" the analysis when other factors of note are present, *In re Google*, 2017 U.S. App. LEXIS 4848 at *5.

      v.    Administrative Difficulties Flowing From Court Congestion

The first public interest factor addresses the administrative difficulties flowing from court congestion.

Ciena submits that any delay following transfer resulting from court congestion is minimal, pointing to statistics demonstrating that the median time to trial in the Northern District is roughly only one year longer than the Eastern District's time to trial. (Dkt. No. 19 Ex. 2.) Ciena also points out that the Northern District has less cases per judge, but it is difficult to find that fact persuasive. The Court views this difference in time to trial as material, especially when a transferred case usually "goes to the back of the line" in relation to the transferee court's existing docket.

Ciena argues further that because Oyster is a non-practicing entity it does not require a quick time to trial to protect any market in which it competes. Oyster responds that it has an unqualified right to the timely enforcement of its property rights.

Taking these facts into consideration, the Court finds this factor to weigh against transfer.

      vi.    Local Interest in Having Localized Interests Decided at Home

The second public interest factor addresses the local interest in having localized interests decided at home.

Ciena's largest U.S.-based research and development facility is located in the Northern District of California. (Rothstein Decl. ¶ 11.) Conversely, Oyster incorporated in Texas five months before bringing the instant suit, possesses no facilities or employees in the district, and does not dispute its place of business is Reston, Virginia. (Ondrick Decl. at Ex. A; Dkt. No. 19 at 3.)

Taking these facts into consideration, the Court finds this factor to weigh in favor of transfer.

III. CONCLUSION

Having considered the governing statute, applicable precedents, and the relevant convenience factors, the Court finds that Defendant has satisfied its burden to demonstrate that the transferee district is a clearly more convenient forum as to this particular case. However, this court views these factors when taken collectively to be somewhat of a close case; though on the whole warranting transfer under § 1404(a). Accordingly, this case is hereby **ORDERED UNCONSOLIDATED** from the Lead Case, Case No. 2:16-cv-01302-JRG, and **ORDERED TRANSFERRED** to the Northern District of California.

Additionally, Ciena's Motion to Stay Pending Decision on Motion to Dismiss or in the Alternative Transfer Based on Improper Venue and Convenience (Dkt. No. 161, 2:16-cv-01302-JRG) is **DENIED AS MOOT**.

**So ORDERED and SIGNED this 22nd day of September, 2017.**

                                          RODNEY GILSTRAP
                                          UNITED STATES DISTRICT JUDGE