RUSS AUGUST & KABAT
Marc A. Fenster (CA SBN 181067)
mfenster@raklaw.com
Reza Mirzaie (CA SBN 246953)
rmirzaie@raklaw.com
Paul A. Kroeger (CA SBN 229074)
pkroeger@raklaw.com
Neil A. Rubin (CA SBN 250761)
nrubin@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
(310) 826-7474 - Telephone
(310) 826-6991- Facsimile

*Attorneys for Plaintiff*
Oyster Optics, LLC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OYSTER OPTICS, LLC, | Case No. 4:17-cv-05920-JSW |
| *Plaintiff,* | **OYSTER OPTICS LLC'S REPLY CLAIM CONSTRUCTION BRIEF** |
| v. | |
| CIENA CORPORATION, | |
| *Defendant*. | |

RUSS AUGUST & KABAT

# TABLE OF CONTENTS

A.   "the optical signals" ('327 cl 1, 14, 25, 36)...................................................... 1

   1.   Ciena Has No Real Response To The Fact Its Construction *Excludes All Preferred Embodiments*, Just As Judge Gilstrap Already Decided.................................... 1

   2.   Ciena's Proposal—To Ignore the Embodiments and Everything Else Identified In Judge Gilstrap's Decision In Favor of a *PTAB Statement* Made Under a Different Claim Construction Standard—Can Only Lead to Reversible Error....................................................... 2

   3.   Ciena's Throwaway "Alternative" Indefiniteness Defense Also Fails ........................... 4

B.   "receiver" ('327 cl. 1, 14, 25, 36; '511 cl. 1, 9; '898 cl. 1, 14) ............................ 5

C.   "receiver…to convert [] second optical signal to output data" ('898 cl. 1, 14).................. 8

D.   "an energy level detector …." ('327 cl. 1, 14, 25; '898 cl. 1, 14) .................................... 10

E.   "phase modulat[e/or]" ('327 cl. 1, 14, 25, 36; '511 cl. 1, 9; '898 cl. 1, 14)..................... 12

F.   "a transmitter having a laser, a modulator, and a controller" ('327 patent cl. 1, 14, 25, 36; '898 cl. 1, 14).................................................................................................... 14

RUSS AUGUST & KABAT

**TABLE OF AUTHORITIES**

RUSS AUGUST & KABAT

**Cases**

*Apple Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014) ............................................................................ 8

*Biogen Idec, Inc. v. GlaxoSmithKline LLC*,
   713 F.3d 1090 (Fed. Cir. 2013) ............................................................................ 6

*Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*,
   257 F3d. 1364 (Fed. Cir. 2001) ............................................................................ 3

*Energizer holdings, Inc. v. Int'l Trade Comm'n*,
   435 F.3d 1366(Fed. Cir. 2006) ............................................................................ 5

*Epistar Corp. v. ITC*,
   566 F.3d 1321 (Fed. Cir. 2009) ............................................................................ 8

*Golight, Inc. v. Wal-Mart Stores, Inc.*,
   355 F.3d 1327 (Fed. Cir. 2004) ............................................................................ 15

*GoPro, Inc. v. C&A Mktg., Inc.*,
   No. 16-cv-03590, 2017 WL 3131449 (N.D. Cal. Jul. 24, 2017) ............................ 4

In re Cuozzo Speed Tech., LLC,
   793 F.3d 1268 (Fed. Cir. 2015) ............................................................................ 3

*In re Hyatt*,
   708 F.2d 712 (Fed. Cir. 1983) ............................................................................ 7

*In re Wright*,
   999 F.2d 1557 (Fed. Cir. 1993) ............................................................................ 7

JDS Techs., Inc. v. Avigilon USA Corp.,
   No. 15-cv-10385, 2017 WL 4248855 (E.D. Mich. Jul. 25, 2017) ......................... 4

*JVW Enters. v. Interact Accessories, Inc.*,
   424 F.3d 1324 (Fed. Cir. 2005) ............................................................................ 9, 14

*Mars, Inc. v. H.J. Heinz Co.*, L.P.,
   377 F.3d 1369 (Fed. Cir. 2004) ............................................................................ 11

MBO Labs., Inc. v. Becton, Dickinson & Co.,
   474 F.3d 1323 (Fed. Cir. 2007) ............................................................................ 5

*Microsoft Corp. v. Multi-Tech Sys., Inc.*,
   357 F.3d 1340 (Fed. Cir. 2004) ............................................................................ 7

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   134 S. Ct. 2120 (2014) ............................................................................ 4

Omega Eng'g, Inc. v. Raytek Corp.,
   334 F.3d 1314 (Fed. Cir. 2003) ............................................................................ 13, 15

Phillips v. AWH Corp.,
   415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 3, 5, 6

*SanDisk Corp. v. Memorex Products, Inc.*,
   415 F.3d 1278 (Fed. Cir. 2005) ............................................................................ 1

**TABLE OF AUTHORITIES**

Standard Oil Co. v. Am. Cyanamid Co.,
  774 F.2d 448 (Fed. Cir. 1985). ................................................................. 3

*Teleflex, Inc. v. Ficosa N.A. Corp.*,
  299 F.3d 1313 (Fed. Cir. 2002) ............................................................... 15

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015) ................................................................. 7

*Thorner v. Sony Computer Ent. Am. LLC*,
  669 F.3d 1362 (Fed. Cir. 2012) ............................................................... 14

*Trustees of Columbia U. in City of New York v. Symantec Corp.*,
  811 F.3d 1359 (Fed. Cir. 2016) ................................................................. 8

*UCB, Inc. v. Yeda Research & Dev. Co., Ltd.*,
  837 F.3d 1256 (Fed. Cir. 2016) ................................................................. 6

*Verizon Services Corp. v. Vonage Holdings Corp.*,
  503 F.3d 1295 (Fed. Cir. 2007) ................................................................. 8

RUSS AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RUSS AUGUST & KABAT

A.     *"the optical signals" ('327 cl 1, 14, 25, 36)*

1.     **Ciena Has No Real Response To The Fact Its Construction *Excludes All Preferred Embodiments*, Just As Judge Gilstrap Already Decided**

Ciena has now acknowledged that it requires that each of received and measured "the optical signals" be the ones previously transmitted ***from the same transceiver to itself***. Ciena Br. at 7. But that, in fact, would ***exclude all preferred embodiments*** in the patent specification, which violates controlling law that renders excluding even some preferred embodiments "rarely, if ever, correct***."*** *SanDisk Corp. v. Memorex Products, Inc.*, 415 F.3d 1278, 1285-86 (Fed. Cir. 2005).

In our opening brief, Oyster demonstrated that Ciena's proposal would exclude all embodiments in the patent. The parties have now agreed that the "transceiver card" in the preamble is limiting—and that is a "transceiver card ***for a telecommunications box***." '327 patent at 6:45, 7:27, 8:6, 8:51. Ciena's response carefully avoids addressing or rebutting the issue of what it means to be "for a telecommunications box." The specification persistently and only teaches the use of a fiber optic transceiver with both transmit and receive functions. The transmit signal is sent off of the transmitter via fiber 110, while a received optical signal from some other transceiver is received via fiber 111. Ex. G, Lebby Decl. ¶ 79. The fibers are *not* connected together; in fact, the fibers are independent of each other. *Id*. One fiber is utilized for sending optical signals, while the other fiber receives signals from another transceiver. *Id*. Thus, a POSITA would only interpret the '327 patent as an approach to conveying optical signals from one transceiver to different transceiver. Ex. G, Lebby Decl. ¶ 79. In other words, the patent only teaches and claims transceivers that include transmitters that transmit optical signals to the input of a receiver in *another* transceiver. Indeed, the entire "Field of the invention is to serve ***telecommunications*** …more particularly … ***for fiber optic networks***." '327 patent at 1:11–13. Indeed, part of the stated benefits of the invention is to assist with "*network operations*" by, among other things, "alert[ing] *network* maintenance personnel" about a failure of a link in the "*network*." '327 patent at 5:12.

If there were any doubt about this, one final piece of intrinsic evidence would resolve it: In responding to an office action, after adding the "the optical signals" element to the then-pending claims, the patentee drew a sharp distinction between optical signals used for "*diagnostics*" for self-testing signals on the one hand, and those used for "*telecommunications*," on the other hand, like

the claims here. Ex. I at 9-10 (emphasis added); Ex. G, Lebby Decl. ¶ 88. Indeed, the patentee further explained that "the optical signals" added to the claims were measured for telecommunications, not for "diagnostics," as in Darcie and, therefore, it would not have been obvious to a POSITA to use such a fundamentally different device like the diagnostic-measuring device in Darcie. Ex. I at 10. ***And Ciena now has failed to debate this record at all.***

Even on the parts of the intrinsic record Ciena says *anything* about, Ciena does not have any real response. Instead, Ciena spends several pages making three passing—and demonstrably false—conclusory statements. First, Ciena suggests that Oyster's argument is based "only" on its expert, Dr. Lebby. Ciena Br. at 7. But that ignores the *nine* citations to the patent claims, specification and file history in Oyster's opening brief. Oyster Br. at 8-11. Second, Ciena argues that "Oyster wrongly asserts that Ciena's proposed construction would result in inoperability of the claimed invention." But this is no response: ignoring all of the above evidence—and the pages of intrinsic and extrinsic evidence in Oyster's opening brief—will not make it go away. It also does not erase Judge Gilstrap's Order or his analysis of the intrinsic record followed by his holding that Oyster's interpretation of the disputed term is consistent with the disclosed embodiments in the patent, but Ciena's current proposal, "by contrast, would appear to result in inoperability [of those embodiments] and is there-fore disfavored." Ex. A, 2017 Order Construing These Claims, at 38-39. Third, Ciena lodges another false conclusion that it is Ciena's proposed construction—the one that construes all claims to *prevent telecommunications*, let alone telecommunication over a network—that is the one that is "consistent with every embodiment." Ciena Br. at 9. Ignoring all the evidence, Ciena's supports this false and conclusory argument on the premise that "the Asserted Patents are silent as to what is at the other end of the fibers." That is disingenuous. Tellingly, the only evidence they cite merely says a *trans-ceiver* card has "[b]oth the transmitter and the recover are located on the backplane of a single card." That obviously is *not* the issue here—and it is time to stop the distractions from the relevant issue.

**2. Ciena's Proposal—To Ignore the Embodiments and Everything Else Identified In Judge Gilstrap's Decision In Favor of a *PTAB Statement* Made Under a Different Claim Construction Standard—Can Only Lead to Reversible Error**

Instead of dealing with this record or controlling law, Ciena takes a different tact. It argues that this Court should effectively ignore this record and Judge Gilstrap's Order because of a later-

in-time decision denying institution of an IPR, in which the PTAB effectively agreed with Ciena's construction. Ciena Br. at 4-10. And obviously recognizing that decision carries far less persuasive weight than this other record evidence, Ciena wrongly casts the decision *as intrinsic evidence*.

This argument fails as a matter of law, for several reasons. *First*, Ciena notably does not even point to a single statement from Oyster to support its argument, because none exits. This alone is fatal to Ciena's argument, because a statement only from the PTAB it is not prosecution disclaimer or estoppel or anything of the sort that could create intrinsic evidence of how the patentee charac-terized his invention for the purpose of claim construction. Ciena, of course, does not cite one case for its contrary suggestion, because that is not the law. Indeed, the law is just the opposite. In the context of limiting the scope of claims, the Federal Circuit has explained that prosecution history, by definition, is limited to "all express representations ***made by or on behalf of the applicant***[.]" *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985). Statements made by an examiner or PTAB alone, on the other hand, generally do not create this type of "prosecution history." *E.g., Dow Chem. Co. v. Sumitomo Chem. Co., Ltd.*, 257 F3d. 1364, 1382 (Fed. Cir. 2001) (refusing to limit claims to a "one stage process" based on statements by the PTO.)

Second, this particular IPR was reviewed under the "broadest reasonable interpretation" standard, ***not*** under the claim construction standard applicable to this dispute now. For purposes of this IPR, the PTO applied "the broadest reasonable interpretation" of a claim term when reviewing patentability; it did not engage in claim construction. *In re Cuozzo Speed Tech., LLC*, 793 F.3d 1268, 1277 (Fed. Cir. 2015). In contrast, in the instant patent infringement litigation, the Court must con-strue the terms of the claim in accordance with a different standard—claim terms are "generally given their ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention[.]" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-13 (Fed. Cir. 2005). *See also PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC*, 815 F.3d 747, 756 (Fed. Cir. 2016) (discussing the differences between the "broadest reasonable construction" standard applied in IPR and claim construction under *Phillips*). Because of these differences, even *party statements* under that "broadest reasonable interpretation" standard have repeatedly been held not probative to *Markman* claim construction. *See, e.g., GoPro,*

RUSS AUGUST & KABAT

3

*Inc. v. C&A Mktg., Inc.*, No. 16-cv-03590, 2017 WL 3131449, at *5 n.4 (N.D. Cal. Jul. 24, 2017); *JDS Techs., Inc. v. Avigilon USA Corp.*, No. 15-cv-10385, 2017 WL 4248855, at *6 (E.D. Mich. Jul. 25, 2017). Here, the *PTAB's statement* under that different standard certainly is not probative. And no matter how probative Ciena tries to make it, it cannot be more probative than the fact one construction here (Ciena's) reads out every embodiment in the patent.

Correcting these clear legal fallacies also does away with another false premise present by Ciena: that Lebby's declaration is "outdated" because he did not "consider the full intrinsic record" or that the intrinsic record he did review was "inherently incomplete" and different from some hypothetical "intrinsic record" that includes the PTAB decision. Ciena's arguments are nothing more than a manufactured attempt to circumvent the reasoned logic and analysis from Judge Gilstrap, because the results of that logic and analysis do not help their case.

### 3.  Ciena's Throwaway "Alternative" Indefiniteness Defense Also Fails

Defendants assert in the alternative that this Court should invalidate the claim for indefiniteness. A claim is invalid for indefiniteness if an accused infringer can demonstrate that it "fail to inform with reasonable certainty those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014). An accused infringer must demonstrate indefiniteness with *clear and convincing evidence. Id.*, at 2132, n.10.

In its single paragraph in support of this indefiniteness defense, Ciena ***does not present any evidence***, let alone clear and convincing evidence, on the sole legal question on this issue. That is: would "those skilled in the art" of optical telecommunications be unable to determine with reasonable certainty the antecedent basis and scope of the claims despite the absence of explicit antecedent basis? Ciena'a failure is fatal to its position—and this point should end the inquiry.

Instead, Ciena presents attorney argument that is premised on the following legally unsupportable position: if their flawed position on the proper construction of the term to a POSITA is wrong, then the claims *must* be invalid. Ciena asserts that because the only place where the exact words "optical signals" appears in the claim prior to "the optical signals" is the reference to optical signals transmitted by transmitter in the same transceiver card, then if that first reference to optical signals does not serve as the antecedent basis for "the optical signals," the patent claims do not have

an explicit antecedent basis and, therefore, must be indefinite.

But the Federal Circuit has rejected this very argument. A patent claim is not invalid for indefiniteness "despite the absence of explicit antecedent basis" if "the scope of a claim would be reasonably ascertainable *by those skilled in the art*[.]" *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370-71(Fed. Cir. 2006) (quoting *Bose Corp. v. JBL, Inc*., 274 F.3d 1354, 1359 (Fed. Cir. 2001). The holdings in *Energizer Holdings* and *Bose* are not one-off statements of law. To the contrary, it is a "*well-settled rule* that claims are not necessarily invalid for a lack of antecedent basis." *Microprocessor Enhancement Corp. v. Texas Instruments Inc.,* 520 F.3d 1367, 1376 (Fed.Cir.2008) (emphasis added). For its part, Ciena does not cite a single Federal Circuit decision in support of its hyper-technical "no explicit antecedent basis" invalidity defense. Ciena's citations to statements of law in non-analogous indefiniteness cases do not change this.

Though not its burden to bear, Oyster presented intrinsic and consistent extrinsic evidence to demonstrate this defense must fail. The claims themselves make clear that "the optical signals" are the optical data signals originating over the second optical fiber associated with the claimed receiver. Ex. G, Lebby Decl., ¶¶ 79-88. Thus, a POSITA would understand that there are—and must be—"optical signals" that are received over the second optical fiber and that have been transmitted by another device at the other end of that second optical fiber, outside of the transceiver card. *Id.*

**B.** *"receiver" ('327 cl. 1, 14, 25, 36; '511 cl. 1, 9; '898 cl. 1, 14)*

Ciena argues that the term "receiver" in the '327 and '511 patents should be construed as "receiver without a demodulator" because Ciena contends that the specifications of these patents do not enable a receiver with a demodulator. As a threshold matter, Ciena's argument fails because Ciena has not established that there is any reason to consider enablement or validity in construing this term. Ciena cites *MBO Labs* for the proposition that claim construction should not "be blind to validity issues." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1332 (Fed. Cir. 2007). But this selective quoting from *MBO Labs* is misleading. The same paragraph of *MBO Labs.* says that consideration of validity in claim construction "should be used as a last resort, not a first principle" and quotes the *en banc Phillips* case for the proposition that the maxim to construe claims to preserve validity is limited "to cases in which the court concludes, after applying all the available

tools of claim construction, that the claim is still ambiguous." *Id.*; *Phillips v. AWH Corp.*, 415 F.3d 1303, 1327 (Fed. Cir. 2005). There is no ambiguity apparent in the term "receiver" that can be resolved by construing it as "receiver without a demodulator."

Even if the enablement question could properly be considered in construing "receiver" in the '327 and '511 patents, Ciena is incorrect to state that Oyster "concedes" that the specifications of the '327 and '511 patents do not enable a receiver with a demodulator. While Oyster concedes that Judge Gilstrap's construction of "receiver" in the '898 patent is binding on it in this case (Oyster Br. at 13), Oyster does not concede that a receiver with a demodulator is not enabled by the specification of the '898 patent. Judge Gilstrap's order found that in the course of prosecuting the '898 patent, the applicant "acquiesce[d]" in the examiners rejection of a claim containing "a receiver having a demodulator." Ex. A at 33. As Judge Gilstrap found, that means that Oyster could not obtain claim scope in the '898 patent that it had withdrawn in response to the examiner's rejection. *Id.* It does not mean that Oyster admitted to or is bound by the factual or legal reasoning behind the examiner's rejection. In particular, it does not mean that Oyster has admitted that a receiver having a demodulator is not enabled by the '898 patent's specification.

None of the cases cited by Ciena supports the proposition that Oyster's amendment in response to the examiner's rejection means that Oyster has acquiesced to the proposition that a receiver having a demodulator is not enabled by the specifications of the patents in suit. For example, both *UCB* and *Biogen* were cases concerning claim construction and the effect of responses to examiner enablement rejections *on the construction of terms in that same patent. UCB, Inc. v. Yeda Research & Dev. Co., Ltd.*, 837 F.3d 1256, 1260-61 (Fed. Cir. 2016); *Biogen Idec, Inc. v. GlaxoSmithKline LLC*, 713 F.3d 1090, 1095–97 (Fed. Cir. 2013). Neither case suggests that those responses to enablement rejections served as admissions on the question of enablement or affected anything beyond to construction of claims in those particular patents.

Ciena has also not presented any evidence that a receiver having a demodulator is not enabled. Oyster's expert, on the other hand, has explained that a POSITA reading the '898 patent would understand it describes a receiver with a demodulator. Ex. G, Lebby Decl., ¶ 40.

The patentee's actions in the prosecution of the '898 patent also do not suggest that the

patentee agreed that a receiver with a demodulator was not enabled. In responding to the examiner's enablement rejection, the patentee did not narrow its claims to only cover receivers without demodulators. Rather, the patentee *broadened* the claims to cover all types of receivers:

a receiver ~~having a demodulator~~ configured to receive a second optical signal from the second optical fiber and ~~demodulate~~ **to convert** the second optical signal to ~~produce~~ output data;

(Ex. K at 2.) Enablement requires "that the enabling disclosure of the specification be commensurate in scope with the claim under consideration." *In re Hyatt*, 708 F.2d 712, 714 (Fed. Cir. 1983). The specification must enable "the full scope of the claimed invention." *In re Wright*, 999 F.2d 1557, 1561 (Fed. Cir. 1993). Accordingly, it would not make sense to *broaden* the scope of the patent claims to overcome a proper enablement rejection. Rather, the patentee's decision to broaden its claims demonstrates it did not concede that a receiver having a demodulator was not enabled.

Ciena argues that Judge Gilstrap's decision limiting the disavowal of scope for "receiver" to the '898 patent should be disregarded because he failed to consider relevant Federal Circuit precedent. But the cases cited by Ciena are fully consistent with the authority that Judge Gilstrap considered in reaching his decision. Contrary to Ciena's brief, Judge Gilstrap expressly considered the *Verizon* case, when he decided the defendants' motion for reconsideration. Ex. B at 6–7. Both of Judge Gilstrap's opinions on the construction of "receiver" acknowledged that prosecution of related patents after claims had issued can be "relevant" to the construction of those claims and cited *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) for that proposition. However, Judge Gilstrap found that the enablement rejection and responsive amendments "were specific to the claims of the '898 patent" and "not directed at 'the specification,'" and thus that they should not be applied to the '327 and '511 patent claims. (Ex. A at 35; Ex. B at 5.)

The first purportedly binding Federal Circuit case that Ciena cites is *Teva*. (Dkt. 100 at 13–14.) But the language that Ciena quotes from *Teva* is a proposition of law for which the opinion in *Teva* cites *Microsoft*. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1343 (Fed. Cir. 2015). Moreover, *Teva* involved a statement in the prosecution of the child application concerning how one skilled in the art would understand a particular claim term. *Teva*, 789 F.3d at 1343. It had nothing to do with disclaimer. The *Columbia* case quotes *Microsoft*, but the issue it actually addressed was

whether statements made during the prosecution of patents in one family could be used in construing claims in patents from a different family. *Trustees of Columbia U. in City of New York v. Symantec Corp.*, 811 F.3d 1359, 1369 (Fed. Cir. 2016).

The *Verizon* and *Apple* cases cited by Ciena involved explicit statements in related prosecution concerning the meaning of claim terms. In *Verizon*, the applicant had told the examiner that the term "wireless" meant "'local wireless' . . . in the second of a cordless phone that is *restricted to operate within a few feet from a base station*." *Verizon Services Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1307 (Fed. Cir. 2007). Moreover, *Verizon* applied a disclaimer from a parent application to its divisional child application. *Id.*; *see* Ex. B at 6–7. In *Apple*, the applicant had made express statements during the prosecution of a related Japanese patent application about how the claimed "transmit overflow sequence number" was used. *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1312 (Fed. Cir. 2014). Neither case stands for the proposition that disclaimers made in a child application necessarily apply to the claims in its parent.

The amendment made in the prosecution of the '898 patent is distinguishable from the cases cited by Ciena, in that the patentee never said anything about the meaning of the term "receiver" during the prosecution of the '898 patent. To the extent that the patentee in the '898 prosecution conceded anything, it was that a claim with the term "receiver having a demodulator" would not have been patentable. However, that term does not appear in the issued claims of the '327 and '511 patents and was never at issue during their prosecution. As Judge Gilstrap correctly determined, the disclaimer that he found was specific to claims in the '898 patent and should not be applied to the previously issued '327 and '511 patent claims.

## C.   *"receiver…to convert [] second optical signal to output data" ('898 cl. 1, 14)*

Notably, Ciena does not dispute that the term has a widely known plain meaning to a POSITA—and also does not contend that its change reflects that plain meaning. But because there is a "heavy presumption" that claim terms carry their "full ordinary and customary meaning," Ciena must now "show the patentee expressly relinquished claim scope." *Epistar Corp. v. ITC*, 566 F.3d 1321, 1334 (Fed. Cir. 2009). Ciena has not shown and cannot show this.

The sole evidence that Ciena presents in favor of its construction are (1) statements in the

RUSS AUGUST & KABAT

specification describing prior art or an example preferred embodiment and (2) purported "IPR disclaimers" made by Oyster responding to IPRs on the '898 and '511 patents. None of this evidence justifies limiting the claims as Ciena proposes. As explained in Oyster's opening brief, the statements in the specification fall far short of being lexicography or clear and unmistakable disclaimer, as required to import limitations from embodiments appearing in the specification. *JVW Enters. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1335 (Fed. Cir. 2005).

Ciena's "IPR disclaimer" argument fares no better. The statements that Ciena cites from Exhibits S, U, and Z are from three of Oyster's responses from two IPRs that unsuccessfully challenged the validity of the '898 patent claims. The paragraphs that Ciena cites in these three documents are identical. They appear in a discussion of the Figure 2 preferred embodiment from the '898 patent specification. Ex. S at 17 ("Figure 2 shows an exemplary embodiment of the components arranged on the same transceiver card 1 in more detail."); Ex. U at 10 (same); Ex. Z at 21 (same). The paragraphs that Ciena points to in each of the three documents simply repeat verbatim the statement from column 5, lines 25 that "Optical receiver 32 converts the optical signal to electronic form to recover the electronic data stream 34 as appropriate for the optical modulation technique employed." Ex. S at 18; Ex. U at 11; Ex. Z at 21. These paragraphs do not even mention the claims, let alone suggest that they should be limited in a particular way. Simply describing an embodiment from the specification and using the same words as the specification uses to do so does not amount to a "disclaimer" making that description a mandatory feature of the claims.

Ciena also points to statements by Oyster in Exhibit CC, Oyster's preliminary response to an IPR challenging the '511 patent. But these statements are even less relevant to the construction of the term that is in dispute. The '511 patent claims at issue in this IPR *expressly require* "converting the optical signals to electronic output data." Ex. CC at 46. Oyster's preliminary response was simply pointing out that the prior art did not satisfy this claim language *expressly requiring* conversion to electronic form because "optical signals" are not "electronic data." *Id.* This has no bearing on whether claims in a *different* patent (the '898 patent) that *never mentions* "electronic" output, should be limited to require output in electronic form.

Ciena's arguments concerning Exhibit Y are similarly unavailing. This exhibit contains the

PTAB's final written decision from another IPR challenging the '898 patent, different from the IPRs addressed in Exhibits S, U, and Z. While Ciena characterizes the PTAB as "persuaded by Oyster's arguments," the pages from Exhibit Y that Ciena cites says nothing about Oyster's arguments at all. Like the pages from Exhibits S, U, and Z cited by Ciena, this page from the final written decision is simply describing the preferred embodiment from Figure 2 of the patent. Ex. Y at 8. It does not mention any dispute between the parties, any patent claim, or any issue of construction.

All that Ciena has demonstrated is that Oyster and the PTAB either repeated verbatim or paraphrased a statement from the specification that describes "converting the optical signal from optical to electronic form" as a feature of a preferred embodiment. ('891 patent at 5:2–5.) Ciena has cited to no statement that connects this description to the disputed claim language, that relies on this description to distinguish prior art, or that suggests it is a mandatory feature of the invention. Ciena has cited no evidence to support importing this feature into the claims.

### D.   *"an energy level detector …." ('327 cl. 1, 14, 25; '898 cl. 1, 14)*

Ciena's only support for its narrow construction that redefines the scope and nature of the claim is its argument based on purported disclaimers made in connection with IPRs brought against Oyster's patents. But Ciena misstates what Oyster actually argued in those IPRs and seeks to limit these terms in ways demonstrably *different from* any statements by Oyster. Oyster made no "clear and unmistakable" statements disclaiming any portion of its claims, and Ciena's proposed construction goes *far beyond* what is justified by any reasonable reading of Oyster's IPR arguments.

For the requirement in Ciena's proposed constructions of "a single energy level detector," Ciena points to an argument that Oyster made in its preliminary response and again in its response for an IPR challenging the '898 patent. Exs. S, U. This argument was made in connection with the limitation of claim 1 of the '898 patent requiring that the "energy level detector includes a plurality of thresholds." Ex. S at 36–37; Ex. U at 42–43. While these IPR responses did say "it is entirely appropriate to construe claim 1 *to require that a single detector measure an optical signal and include a plurality of thresholds*," the context matters. And here, the context eliminates any confusion regarding the meaning of the statement. The purpose of this statement was to distinguish the Corke prior art reference which had multiple detectors, each with a single threshold. Ex. S at 37;

RUSS AUGUST & KABAT

Ex. U at 44. As Oyster explained it, "[t]here simply is no single 'detector' in Corke, and no single measurement of an optical signal, that is associated with a plurality of thresholds." Ex. S at 37; Ex. U at 44. Thus, in the statement Ciena's relies on so heavily, all Oyster said is that the patent requires that the plurality of thresholds be contained in the ***same "single" detector***, rather than each being in ***multiple, separate detectors***.

Under any proper reading, this statement **is not saying** that there cannot be other energy level detectors elsewhere in the device. But this appears to be precisely the way Ciena would like to interpret this disputed claim phrase to the jury, by changing the claim, which requires a transceiver card "comprising …an energy level detector that includes a plurality of thresholds" to one that requires only "a single energy level detector on a transceiver card ***and*** including reference voltages…" Ciena's sleight of hand must be rejected.

Indeed, basic principles of Federal Circuit claim construction confirm this answer. The claims of the '327 and '898 patents use the transitional term "comprising," which is "open-ended and does not exclude additional, unrecited elements or method steps." *Mars, Inc. v. H.J. Heinz Co.*, *L.P.*, 377 F.3d 1369, 1376 (Fed. Cir. 2004) (quoting MPEP, 8th ed.) Accordingly, claim 1 of the '327 patent and claim 1 of the '898 patent both require an "energy level detector [that] includes a plurality of thresholds," but they do not exclude the possibility of additional energy level detectors so long as the energy level detector required by the claims is present. Claim 1, as written, is sufficiently clear that the "plurality of thresholds" must be present in the same detector. However, to the extent that the Court believes this requirement must be made explicit, Oyster suggests that the construction refer to the thresholds being in the "same" detector rather than in a "single" detector.

Even if it were appropriate to construe "energy level detector" as "single energy level detector" for claim 1 of the '327 patent and claim 1 of the '898 patent that refer to a "plurality of thresholds," there is no justification for doing the same for claims 14 and 25 of the '327 patent and claim 14 of the '898 patent, which only refer to "a threshold." The statements Ciena relies on from the '898 IPR in Exhibits S and U distinguish a prior art reference on the grounds it does not satisfy the "energy level detector includes a plurality of thresholds" and proposes a construction "to require that a single detector measure an optical signal and include a plurality of thresholds." Ex. S at 35–

RUSS AUGUST & KABAT

RUSS AUGUST & KABAT

1  37; Ex. U at 42–44. These statements have nothing to do with the terms requiring "a threshold" and

2  there are no similar statements cited by Ciena that relate to the "a threshold" terms. There is no need

3  and no justification for construing the "a threshold" terms as "a single energy level detector . . . ."

4      For the requirement of "a reference voltage" in Ciena's proposal, Ciena points to the same

5  portions of Exhibits S and U. But these statements from the IPR responses do not even mention

6  "voltage," let alone suggest that "a reference voltage" is a required feature of the claimed detectors.

7  Ciena notes that Oyster included an annotated version of Figure 3 of the '898 patent in its responses.

8  But what Oyster said concerning this figure is that the "correct interpretation is consistent with Fig.

9  3 of the '898 patent, which depicts multiple thresholds (163, 164) being compared to a measured

10 energy level (output of element 155)." Ex. S at 36; Ex. U at 43. The aspect of Figure 3 that Oyster

11 was pointing to is the presence of multiple thresholds in the same detector. Simply saying that the

12 correct construction "is consistent" with Figure 3 does not justify importing every single feature of

13 the embodiment depicted in Figure 3—including the "reference voltages" that were never even

14 mentioned in the relevant parts of the IPR responses—into the claims. And even if it were

15 appropriate to import the "reference voltages" into the claims, these statements in the IPR responses

16 have nothing to do with the "a threshold" claims and do not justify any limitation to those claims.

17     **E.**    ***"phase modulat[e/or]" ('327 cl. 1, 14, 25, 36; '511 cl. 1, 9; '898 cl. 1, 14)***

18     As Oyster pointed out in its opening brief, this term was also previously construed twice by

19 Judge Gilstrap—precisely as Oyster proposes here. Notably, the second construction was a

20 "clarification" required after the parties in that case spent months litigating under "disputed

21 interpretations" caused by the very construction Ciena now proposes. And after receiving into

22 evidence over a dozen pieces of intrinsic and extrinsic evidence in the form of expert declarations

23 and deposition transcripts, Judge Gilstrap explained why, based on representations by the defendants

24 and the defendants' experts in that case,  the very construction Ciena now proposes would exclude

25 the preferred embodiment and virtually every phase modulation system ever known to man.

26     Ciena's first reaction to all this evidence in Oyster's opening brief and cited in Judge

27 Gilstrap's Order is to run from it by saying that these publicly available facts and findings were not

28 cited as part the "Local Patent Rule 4.3 Statement" and were based only on "attorney argument."

12

Thus is demonstrably false. Oyster cited and provided the Order to Ciena months ago during a discussion on the very topic of claim construction months ago. And the details in that Order span fifteen pages of intrinsic and extrinsic record evidence. That, plus Oyster's evidence cited in its opening brief, cannot be reasonably called mere "attorney argument."

The problem and errors Ciena's construction would cause are now crystal clear. While the patent may downplay amplitude modulation, the sleight of hand built into Ciena's faulty construction goes too far. As with the prior case, by seeking to "alter the phase of light while keep the amplitude of that light constant," it seeks to exclude amplitude modulation and also excludes any type of amplitude alteration. Ex. C, 2018 Order Further Construing These Claims at 2-13.

Ciena notably never suggests that its construction is the plain meaning of "phase modulate" because it is not. This means that, even if Ciena's construction were less extreme and did not exclude every embodiment, it is still wrong if is narrower than the plain meaning and finds inadequate support in the form of patentee disclaimer or lexicography. Here, the intrinsic record and Judge Gilstrap's Order confirms there is no such support. All parties in the prior case (including five accused infringers) agreed that amplitude modulation requires "something more than merely altering amplitude." It "works by modulating the amplitude of the wave depending on the binary electrical data signal. With amplitude modulation, the power of the signal jumps between, e.g., 100% (maximum light) and 0% (no light) depending on the bit being transmitted." Id. at 7. But excluding from the scope any amplitude alteration based on a statement about something more circumscribed, namely, amplitude modulation, would violate Federal Circuit law. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003). Applying the evidence Oyster has cited, under Defendants' proposal, this claim would be rendered nonsensical—as the evidence makes clear there may never be "a phase-modulated" signal with "a drop in amplitude."

Ciena's "intrinsic record" argument is unavailing. While Ciena focuses on the patent's discussion of a "phase-modulated mode" in which "amplitude of the optical signal is constant," in context, that plainly is referring to "constant" amplitude compared to amplitude modulation. '327 patent at 4:45–47 Indeed, elsewhere the patentee says "conventional amplitude-modulated transmitters and receivers … may also be used." *Id.* at 4:40–41.

And Ciena's extrinsic evidence argument fares no better. On that front, Ciena focuses on a "white paper" by the patentee. This is truly a grasping for straws. The snippets Ciena quotes do not even disparage amplitude modulation or alteration. Thus, it does nothing to help their flawed cause.

**F.** **_"a transmitter having a laser, a modulator, and a controller" ('327 patent cl. 1, 14, 25, 36; '898 cl. 1, 14)_**

On this dispute, Ciena's brief includes a helpful point. It shows a definition of the term "having" that confirms what should already be obvious: Ciena's construction of "having," which required being located within, is inconsistent with the full scope of the plain meaning of that word: "to hold, include, or contain as a part or whole." Ex. T, Institution Decision in IPR2018-00070 at 17–18 (quoting Webster's Tenth Collegiate Dictionary (1998)). This definition makes clear that only some, but not all, of the full scope of the term's plain meaning is to "contain." There are other aspects to the term's plain meaning, even according to Ciena's admitted definition—and they also include to "hold" and also "to include [] as a part or whole."

Additionally, "having" stands in contrast with other terms the patentee used in the claims, such as "comprising" which the parties agree actually does mean located within. Here, the patentee chose to use a different word, "having." This further demonstrates that Oyster's construction is the only correct one. Having is a possessive term that includes "hold[ing]" even in "part." And Ciena's located-within redefining is narrower than the term's plain meaning in any event.

"There are only two exceptions" in which claim terms are not given their full ordinary and customary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of a claim term either in the specification or during prosecution." _Thorner v. Sony Computer Ent. Am. LLC_, 669 F.3d 1362, 1365 (Fed. Cir. 2012). Ciena cannot meet its burden of showing either exception applies. Though it argues that every embodiment in the patent shows a transmitter with the laser located within it, that, as a matter of law is not enough to limit the claim term beyond its plain meaning. In fact, the Federal Circuit has warned that courts "do not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment." _See JVW Enters._, 424 F.3d at 1335. And the

specification may be used to resolve ambiguity "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc. v. Ficosa N.A. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). The claims here do not lack this clarity, especially for the everyday word "having."

Ciena's final argument fares no better. On this argument, it focuses on the file history to claim there is a prosecution history disclaimer, in the IPR proceedings, which require its "located within" construction. Ciena Br. at 24-25. Not so. Oyster's IPR statements merely pointed out that petitioner's theory for showing the claimed "transmitter having a laser" went far beyond what the Ade prior art reference at issue called the entire "transceiver" and yet still did not show any laser. In other words, Oyster never doubted that the claim required a "transmitter having a laser;" because its statements really were not about a transmitter at all. Rather, it only pointed out that petitioner failed to show the "laser" (or "light source") at all, anywhere, because it merely drew a box around "light" 16 possibly coming from a laser "not shown." Ex. V at 21–22.

For example, Oyster corrected and completed the PTAB record that Cisco presented by showing that "Cisco's depiction makes clear that it's box-drawing exercise did not cover any "laser," but instead admittedly only covered (at arrow 16) CW "input light." Moreover, on the very next page of the IPR, which Ciena does not put in its brief, Oyster noted that Cisco itself acknowledged that Ade's 'input light' 16 is not a 'laser,' but instead 'input' light coming from a laser" Ex. V at 21.

These facts confirm that Oyster did not do anything to disclaim drawing a "transmitter" box differently than what Ade called its transmitter, but only that petitioner could not show that the transceiver (which contains a transmitter and receiver in it) had a laser. This does not trump the plain meaning of the term or the using of "having" in contrast to "comprising." It cannot operate as a disclaimer of claim scope beyond the plain meaning. *See Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1332 (Fed. Cir. 2004) (where "statements in the prosecution history are subject to multiple reasonable interpretations, they do not constitute a clear and unmistakable" disclaimer). And it certainly cannot operate as a disclaimer carving out more than what any reasonable reading of Oyster's statements in IPR would allow. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

1

Respectfully submitted,

2

3   Dated April 10, 2020          RUSS AUGUST & KABAT

4

5                                 By: /s/    Reza Mirzaie
                                  Marc A. Fenster (CA SBN 181067)
6                                 E-mail: mfenster@raklaw.com
                                  Reza Mirzaie (CA SBN 246953)
7                                 E-mail: rmirzaie@raklaw.com
                                  Paul A. Kroeger (SBN 229074)
8                                 Email: pkroeger@raklaw.com
                                  Neil A. Rubin (CA SBN 250761)
9                                 Email: nrubin@raklaw.com
                                  RUSS, AUGUST & KABAT
10                                12424 Wilshire Boulevard, 12th Floor
                                  Los Angeles, CA  90025
11                                Telephone:     310/826-7474
                                  Facsimile:      310/826-6991

12                                **Attorneys for Plaintiff**
                                  **OYSTER OPTICS, LLC**

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RUSS AUGUST & KABAT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CERTIFICATE OF SERVICE

I hereby certify that the counsel of record who are deemed to have consented to electronic service are being served on April 10, 2020 with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).  Any other counsel of record will be served by electronic mail, facsimile transmission and/or first-class mail on this same date.


_____ /s/ Reza Mirzaie_____