UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OYSTER OPTICS, LLC,<br><br>  Plaintiff,<br><br>  v.<br><br>CIENA CORPORATION,<br><br>  Defendant. | Case No. 17-cv-05920-JSW<br><br>**ORDER RESOLVING MOTIONS FOR SUMMARY JUDGMENT RE: ENABLEMENT AND WRITTEN DESCRIPTION AND RELATED PORTIONS OF MOTIONS TO STRIKE TESTIMONY OF DR. GEORGE PAPEN AND DR. KEITH GOOSEN**<br><br>Re: Dkt. Nos. 177-4 (178), 181, 184-3 (182), 186-2 (185)[1] |

This is the second in a series of Orders addressing the parties' motions for summary judgment and related *Daubert* motions. This Order addresses (1) the parties' cross-motions for summary judgment on Defendant Ciena Corporation's ("Ciena") affirmative defense of invalidity for lack of enablement; and (2) Plaintiff Oyster Optics LLC's ("Oyster") motion for summary judgment on Ciena's affirmative defense of invalidity for lack of written description. In connection with those motions, Oyster's moves to strike the testimony and opinions of Ciena's expert Dr. George Papen ("Dr. Papen") and Ciena moves to strike the testimony and opinions of Oyster's expert, Dr. Keith Goosen. The Court has considered the parties' papers, relevant legal authority, and the record in this case. For the reasons that follow, the Court DENIES the motions for summary judgment and DENIES the motions to strike.[2]

//

---

[1] The docket numbers in parentheses are redacted versions of motions filed under seal.

[2] The Court will address the other issues raised by the parties' motions for summary judgment in separate orders.

1

**BACKGROUND**

Oyster accuses Ciena of infringing claims 25, 27-32, and 36-37 (the "Asserted Claims") of U.S. Patent No. 7,620,327, *Fiber Optic Telecommunications Card with Energy Level Monitoring* (the "'327 Patent"). (Dkt. No. 183, Declaration of Blair M. Jacobs ("5/21/21 Jacobs Decl."), ¶¶ 18, 25; Dkt. Nos. 183-18, 183-25, 5/21/21 Jacobs Decl., Ex. 18 (Oyster Infringement Contentions), Ex. 25 ('327 Patent).) The '327 Patent is directed to a transceiver card for secure communications over fiber optic networks. ('327 Patent at 1:11-13, 2:22-24.)

Fiber optic networks use light to communicate. (*See id.* at 1:20-35.) In traditional transceiver cards, a "transmitter" modulates the amplitude of a light beam (creating an "optical signal") to transmit data. (*Id.*) "Modulating" refers to putting data on a lightwave carrier. (5/21/21 Jacobs Decl., ¶ 14; Dkt. No. 177-34, Jacobs Decl., Ex. 14 (Deposition of Peter "Rocky" Snawerdt ("Snawerdt Depo.") at 77:21-24).) A "receiver," in turn, converts the light back into data by reading electronic output. ('327 Patent at 1:30-33; *see also* Snawerdt Depo. at 77:25-78:4 (testifying that demodulation is extracting data from lightwave carrier signal, which is done in the receiver).)

Figure 2 of the '327 Patent shows the common transceiver card architecture:



A transmitter **10** (outlined in dashed lines at the top) contains a laser **12** that beams light and a modulator **16** that encodes data into that light. ('327 Patent at 4:25-38.) A receiver **11** (outlined in dashed lines below the transmitter) has an optical receiver **32** that converts the optical signal back into data. (*Id.* at 4:64-67.) Optical signals exit the transmitter and enter the receiver through fibers **110** and **111**, respectively. (*Id.* at 4:26-27, 4:48-49.)

Claim 25 provides:

> A transceiver card for a telecommunications box for transmitting data over a first optical fiber and receiving data over a second optical fiber, the card comprising:
>
> a transmitter for transmitting data over the first optical fiber, the transmitter having a laser, a modulator and a controller receiving input data and controlling the modulator as a function of the input data, the transmitter transmitting optical signals for telecommunications as a function of the input data;
>
> a fiber output optically connected to the laser for connecting the first optical fiber to the card;
>
> a fiber input for connecting the second optical fiber to the card;
>
> *a receiver* optically connected to the fiber input for receiving data from the second optical fiber; and
>
> an energy level detector to measure an energy level of the optical signals, the energy level detector including a threshold indicating a drop in amplitude of a phase-modulated signal.

Claim 36 provides:

> A transceiver card for a telecommunications box for transmitting data over a first optical fiber and receiving data over a second optical fiber, the card comprising:
>
> a transmitter for transmitting data over the first optical fiber, the transmitter having a laser, a modulator and a controller receiving input data and controlling the modulator as a function of the input data, the transmitter transmitting optical signals for telecommunications as a function of the input data;
>
> a fiber output optically connected to the laser for connecting the first optical fiber to the card;
>
> a fiber input for connecting the second optical fiber to the card;
>
> *a receiver* optically connected to the fiber input for receiving data from the second optical fiber;

> a splitter to split at least a portion of the optical signals to form a split optical signal;
>
> a photodetector to measure the split optical signal, the photodetector outputting an electric voltage to correlating [*sic*] to an optical power of the split optical signal, and
>
> a detector controller connected electrically to the photodetector.

The Court will address additional facts as necessary in the analysis.

## ANALYSIS

**A.     The Court Denies the Motions to Strike.**

**1.     Applicable Legal Standards.**

Under Rule 702, scientific, technical, or otherwise specialized knowledge is admissible if it will assist the trier of fact to understand the evidence or determine a fact in issue, is based on sufficient facts or data, and is the product of reliable methods or principles that have been applied reliably to the facts of the case. Fed. R. Evid. 702(a)-(d). The party proffering an expert bears the burden to show the testimony is admissible. Under *Daubert* and its progeny, a district court's inquiry into admissibility "is a flexible one." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (citation omitted). In evaluating proffered expert testimony, the trial court is "a gatekeeper, not a fact finder." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation and quotation marks omitted).

"[T]he trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" *Id.* at 564 (quoting *Daubert*, 509 U.S. at 597). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 565 (citation and quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.* at 564 (citation omitted). The judge is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, 738 F.3d at 969. Simply put, "[t]he district court is not tasked with deciding whether the expert is right or wrong, just whether [their] testimony has

substance such that it would be helpful to a jury." *Id.* at 969-70.

A court may consider the following non-exhaustive factors to determine whether expert testimony is sufficiently reliable to be admitted into evidence, including:

> (1) whether the scientific theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a known or potential error rate, and (4) whether the theory or technique is generally accepted in the relevant scientific community.

*Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1064 (9th Cir. 2002). "[W]hether *Daubert's* specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 153 (1999).

**2.    Dr. Papen.**

Dr. Papen opines that the '327 Patent is invalid because the claims fail to comply with the written description requirement and is invalid for lack of enablement because the specification does not disclose or enable a receiver with or without a demodulator. (*See* Dkt. No. 185-2, Declaration of Paul Kroeger ("Kroeger Decl."), ¶ 2; Dkt. No. 186-5, Kroeger Decl., Ex. 1, Papen Report, ¶¶ 182-233.) In Oyster's view, Dr. Papen's opinion is *legally* erroneous and should therefore be excluded. Dr. Papen includes the legal standard he applied to determine whether the '327 Patent was enabled, and he includes an accurate statement of the standard to be applied. (Papen Report, ¶ 193.)

Oyster argues that Dr. Papen's opinion rests on an incorrect construction of the term "receiver," but Dr. Papen also recognized that the Court did not provide a construction for the term. (*Id.*, ¶ 198.) The Court concludes that Oyster's challenge goes to the weight the finder of fact should give Dr. Papen's testimony, rather than its admissibility. Accordingly, it DENIES the motion.

**3.    Dr. Goosen.**

Ciena argues that the Court should preclude Dr. Goosen from testifying because he copied large portions of another expert's report in his own report. The portions of the report that Ciena contends Dr. Goosen copied relate to matters that the parties have resolved. To the extent Ciena

argues that impacts his credibility regarding his opinions on enablement, the Court concludes Ciena's objections go to weight rather than admissibility.

Ciena also moved to strike Dr. Goosen's opinions on enablement and contended Dr. Goosen misapplied the Court's claim construction of the term receiver.  Dr. Goosen recognized that the Court did not define the term receiver and set forth the applicable legal standard for enablement.  (Dkt. No. 208-2, Omnibus Decl. of Paul Kroeger ("Kroeger Decl."), ¶ 18; Dkt. No. 255-24, Kroeger Decl., Ex. Q (Declaration of Keith Goosen, ¶ 2, Ex. A (Goosen Validity Report, ¶¶ 24, 46.)

Although Ciena's arguments focused on the '898 Patent, to the extent Ciena's argument includes the '327 Patent, the Court conclude the objections go to the weight of his testimony rather than its admissibility.

**B.      The Court Denies the Motions for Summary Judgment on the Invalidity Defenses.**

**1.      Legal Standards Applicable to Motions for Summary Judgment.**

A party may move for summary judgment, identifying each claim or defense . . . on which summary judgment is sought." Fed. R. Civ. P. 56(a).  A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment, or partial summary judgment, is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Court may not weigh evidence or make determinations of credibility.  Rather, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323; *see also* Fed. R. Civ. P. 56(c).  An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson*, 477 U.S. at 248-49.  A fact is "material" if it may affect the outcome of the case. *Id.* at 248.  If the party moving for summary judgment does not have the ultimate burden

of persuasion at trial, the party must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)). It is not the Court's task "to scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards*, 55 F.3d at 251); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record."). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (cleaned up). If the non-moving party fails to point to evidence precluding summary judgment, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

The '327 Patent is presumed to be valid. 35 U.S.C. § 282. In order to prevail on its motion Ciena "must submit such clear and convincing evidence of invalidity so that no reasonable jury could find otherwise." *Eli Lilly v. Barr Labs., Inc.*, 251 F.3d 955, 962 (Fed. Cir. 2001) (citation omitted). To prevail on its motion, Oyster must be able to show that Ciena "failed to produce clear and convincing evidence on an essential element of" its invalidity defenses. *Id.*

### 2. Enablement.

The United States Supreme Court recently reiterated that the enablement requirement enforces the "*quid-quo-pro* premise of patent law," *i.e.*, in return for the patent monopoly, the patentee must "ensure the public has the full benefit of the invention or discovery after the expiration of the patent term." *Amgen, Inc. v. Sanofi*, 598 U.S. 594, 604-05 (2023) (cleaned up). To do so, a patent specification must include "a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art ['POSITA'] … to make and use the same." 35 U.S.C. §

7

112(a). The Court also reiterated that "the specification must enable the full scope of the invention as defined by its claims." *Id.* at 610.

> If a patent claims an entire class of processes, machines, manufactures, or compositions of matter, the patent's specification must enable a person skilled in the art to make and use the entire class. … The more one claims, the more one must enable. … That is not to say a specification always must describe with particularity how to make and use every single embodiment within a claimed class. For instance, it may suffice to give an example (or a few examples) if the specification also discloses some general quality … running through the class that gives it a peculiar fitness for the particular purpose. … In some cases, disclosing that general quality may reliably enable a person skilled in the art to make and use all of what is claimed, not merely a subset.

*Id.* at 610-11 (internal quotations and citation omitted).

Ciena argues the '327 Patent is invalid because the specification does not enable a "receiver with a demodulator" or a "receiver without a demodulator." Oyster argues that Ciena will not be able prevail on this defense because the specification enables a "receiver." The question of whether a patent is enabled involves two steps. First, one must determine "the precise scope of the invention." *McRO, Inc. v. Bandi Namco Games Am., Inc.*, 959 F.3d 1091, 1100 (Fed. Cir. 2020). During claim construction proceedings, the parties agreed that "the ordinary meaning of a 'receiver' is not limited to receivers without demodulators[.]" (Dkt. No. 127, Claim Construction Order at 11:21-22 (emphasis added).) The Court did not provide a construction for the term "receiver" and subsequently explained that "[t]he ordinary, non-construed meaning of 'receiver' includes receivers with all sorts of components, some of which *may* be demodulators." (Claim Construction Order at 16:24; Dkt. No. 134, Order Denying Ciena's Motion for Reconsideration at 2:22-23 (emphasis added).) Thus, under the Court's construction, a demodulator may be a component of the receiver but it is not necessarily required.

Ciena once again argues that during prosecution of the '898 Patent, which shares a common specification with the '327 Patent, Oyster conceded that the specification does not enable a receiver with a demodulator. The Court did not decide that Oyster's amendments to the '898 Patent were an admission. (Claim Construction Order at 15:15-16.) Instead, the Court determined that "[a]n admission that the specification does not enable additional components, such as a

8

demodulator, … does not *clearly* render the full scope of the claims non-enabled." (Claim Construction Order at 15:15-16, 16:14-16) (emphasis added); *see also id.* at 16:17-18 ("[T]he issue is not nearly clear enough to justify limiting the scope of the claims absent prosecution disclaimer.").) Accordingly, the prosecution history of the '898 Patent is not sufficient, on its own, to demonstrate by clear and convincing evidence that the receiver claimed in the '327 Patent is not enabled.

The second step of the enablement analysis examines "whether undue experimentation is required to make and use the full scope of embodiments of the invention claimed." *McRO*, 959 F.3d at 1100. The following factors guide that analysis: "(1) the quantity of experimentation necessary, (2) the amount of direction or guidance presented, (3) the presence or absence of working example, (4) the nature of the invention, (5) the state of the prior art, (6) the relative skill of those in the art, (7) the predictability of the art, and (8) the breadth of the claims." *In re Wands*, 858 F.2d 731, 737 (Fed. Cir. 1998). Neither Ciena nor Oyster addresses these factors in their briefs. However, Dr. Goosen and Dr. Papen agree on only one of them: that the art is unpredictable. (*Compare* Papen Report, ¶¶ 199-212 *with* Goosen Validity Report ¶¶ 45, 84-90.) Because the Court has denied the motions to strike, it will be up to the finder of fact to determine whose testimony is more persuasive.

For these reasons, the Court concludes that neither Oyster nor Ciena has met its burden to show it is entitled to summary judgment on the issue of enablement (or lack thereof) and it DENIES their motions.

### 3. Written Description.

Oyster also argues that Ciena will not be able to prevail on lack of written description defense. "A specification adequately describes an invention when it 'reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date.'" *Juno Therapeutics, Inc. v. Kite Pharma, Inc.,* 10 F.4th 1330, 1335 (Fed. Cir. 2021) (quoting *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)). This issue generally is a question of fact and "[w]hat is required to meet the written description requirement varies with the nature and scope of the invention at issue, and with the scientific and

technologic knowledge already in existence." *Id.* (cleaned up).  Factors which guide the analysis include "the existing knowledge in the particular field, the extent and content of the prior art, the maturity of the science or technology, [and] the predictability of the aspect at issue." *Ariad Pharms.*, 598 F.3d at 1351.

Again, the parties' experts present contradictory views on this issue, and it will be up to the finder of fact to determine whose testimony is more persuasive.

Accordingly, the Court DENIES Oyster's motion.

**IT IS SO ORDERED**.

Dated:  October 24, 2023

_____
JEFFREY S. WHITE
United States District Judge